IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Donna Joan Hess,          :
                Plaintiff  :     Civil Action 2:09-cv-00124

        v.                :     Judge Holschuh

Michael J. Astrue,        :     Magistrate Judge Abel
Commissioner of Social Security,
                Defendant  :

**REPORT AND RECOMMENDATION**

Plaintiff Donna Joan Hess brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for  Supplemental Security Income benefits.  This matter is before the

Magistrate Judge for a report and recommendation on the parties' cross-motions for

summary judgment.

**Summary of Issues.**  Hess was 44 years old at the time of the administrative law

judge's decision. She obtained a General Equivalency Diploma and was receiving

vocational training through the Ohio Bureau of Vocational Rehabilitation. She had past

relevant work as a bank secretary, switchboard operator, and proof accounting clerk.

Hess asserted that she was disabled due to complications from obesity, pain in her

knees, lumbar spine, cervical spine, fatigue, and cardiac function limitations. The

administrative law judge concluded that Hess had the residual functional capacity to

perform sedentary work that involved no lifting and/or carrying of greater than five

pounds frequently or ten pounds occasionally; no sitting for longer than two hours at a

time; no standing and/or walking for longer than 30 minutes at a time or two hours total in a workday; no more than occasional bending, stooping, ladder climbing, or reaching overhead; and no working at unprotected heights or around dangerous machinery. The administrative law judge also concluded that plaintiff was able to cope with routine stress, but she must avoid high stress work environments. Based on her residual functional capacity assessment, the administrative law judge determined that Hess could perform her past relevant work.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge:

- Improperly evaluated the impact of plaintiff's obesity on her ability to function in a work setting;
- Failed to give controlling weight to the opinion of plaintiff's primary treating doctor;
- Failed to obtain testimony from a qualified medical expert and vocational expert; and,
- Failed to properly evaluate plaintiff's credibility.

**Procedural History.** Plaintiff Donna Joan Hess filed her application for disability insurance benefits on July 23, 2004, alleging that she became disabled on January 1, 2004, at age 40, by incontinence, diverticulitis, stomach spasms, obesity, diabetes, high blood pressure, and knee, ankle and shoulder pain. (R. 58, 48.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On January 7, 2008, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 850.) On May 21, 2008, the administrative law judge issued a decision finding that Hess was not

disabled within the meaning of the Act.  (R. 33.)  On December 23, 2008, the Appeals

Council denied plaintiff's request for review and adopted the administrative law

judge's decision as the final decision of the Commissioner of Social Security.  (R. 14-16.)

**Age, Education, and Work Experience.**  Donna Joan Hess was born August 1,

1963.  (R. 58.) She completed the tenth grade and earned her GED.  (R. 856-57.)  She has

worked as a weed puller, assistant manager of a store, secretary, cashier, and switch-

board operator.  She last worked in 1994.  (R. 110.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Hess's

testimony as follows:

> At the hearing, the claimant testified that she lives with three
> of her four dependent-age children and take and picks them
> up from school She said that she is able to drive for one and
> one-half hour at a time. She said that she participated in
> vocational rehabilitation, working part-time for a two-week
> period. She said that she is computer literate. She said that
> she reads the Bible, cooks about nine times weekly, washes
> dishes daily, vacuums every other day, cleans six loads of
> laundry weekly, helps her children with homework, watches
> television, attends church, and crochets. She acknowledged
> that she can satisfactorily follow simple work rules, relate to
> coworkers, deal with the public, use judgment, interact with
> supervisors, function independently, maintain attention/
> concentration most of the time, maintain her personal
> appearance, and demonstrate reliability. She said that she
> has difficulty dealing with routine stress because of nerves,
> stress, and incontinence. Her level of activity is not con-
> sistent with the level and persistence of symptoms that she
> alleges.

(R. 32.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize the evidence related to plaintiff's physical impairments.

A.W. Barber, M.D. On January 4, 2005, Dr. Barber performed a consultative examination. (R. 244-47.) Plaintiff complained of fecal incontinence, diverticulitis, stomach spasms, obesity, diabetes, high blood pressure, and knee, ankle and shoulder pain. Plaintiff reported that she was disabled because her chronic pain impaired her concentration and she needed to go the bathroom frequently. She also reported that she was depressed. (R. 244.)

On physical examination, she had +1 edema in both ankles. (R. 246.) She had decreased range of motion in her lower extremities due to pain, right muscles, right knee pain, and obesity. She also had decreased range of motion in her back due to pain, tight muscles, and obesity. Dr. Barber noted that plaintiff walked with difficulty. She had a slow gait because of her obesity, and she was unable to walk on her toes or heels. She also could not squat. She was not using any assistive device. (R. 247.)

Dr. Barber diagnosed bowel incontinence, by history; diverticulitis, by history; hiatal hernia with GERD; morbid obesity with a body mass index of greater than 30; diabetes; high blood pressure; degenerative joint disease of the knees with chronic pain; right ankle pain; right shoulder pain; and depression. *Id.* Dr. Barber concluded:

> Physical examination reveals claimant could be limited in walking,
> standing and sitting, for long periods of time, because of morbid obesity,
> and decreased range of motion in upper extremities, lower extremities,

and back, as stated on range of motion report form, due to pain and tight muscles. Claimant could be limited in lifting and carrying heavy objects. Claimant is obese and symptoms are possibly perpetuated by excessive weight.

*Id.*

Physical Residual Functional Capacity (signature illegible). On January 13, 2005, a physical residual functional capacity was completed. (R. 252-59.) Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She could stand and/or walk for a total of 2 hours in an 8-hour workday and could sit for a total of about 6 hours in an 8-hour workday. She was limited in her ability to push and/or pull with her lower extremities. (R. 253.) Although she could never climb ladders, ropes, or scaffolds, she could occasionally climb ramps and stairs. She could also occasionally balance, stoop, kneel, crouch, and crawl. (R. 254.) Hess was limited in her ability to reach. (R. 255.)

The reviewing physician noted that her symptoms were attributable to diverticulitis, hiatal hernia, GERD, and obesity. Her allegations of pain were credible. The residual functional capacity for sedentary work was based on her excessive weight and incontinence. (R. 257.) The reviewer also concluded that plaintiff could perform her past relevant work as an assistant store manager. (R. 260.)

Florida Hospital Deland. On February 2, 2005, Hess was treated at the emergency room and admitted to the hospital for complaints of chest pain. (R. 264-79.) A chest

x-ray showed borderline cardiomegaly and mild vascular congestion. An electrocardio-gram showed normal sinus rhythm with no acute ischemic changes. (R. 265.)

A February 3, 2005 echocardiogram showed a moderately dilated left ventricle with low normal left ventricular global systolic function; mild mitral regurgitation; mild tricuspid regurgitation; and mild pulmonary hypertension. (R. 272.)

A February 7, 2005 CT of Hess's abdomen and pelvis showed an anterior abdominal wall hernia with bowel loops extending into the hernia sac. (R. 275.) On April 20, 2005, plaintiff underwent a ventral hernia repair. (R. 288-91.)

An August 31, 2005 CT scan of the abdomen and pelvis showed the continued presence of a small ventral hernia containing a small bowel loop without evidence of bowel obstruction. (R. 414-15.)

On November 29, 2005, Hess complained of abdominal pain. She was found to have a recurrent, incarcerated incisional hernia and surgery to repair the hernia was recommended. (R. 428-29.)

<u>Youssef W. Guergues, M.D.</u> On April 15, 2005, Dr. Guergues evaluated plaintiff for complaints of low back pain and bilateral knee pains for the past ten years following an epidural during labor. (R. 283-85.)  Hess rated her pain as a 10 on a scale of 1 to 10. She described the pain as cutting, stabbing, and shooting over the lower back with radiating pain into her legs and feet at times. Hess also complained of severe pain in her

knees with the right being worse than the left. An MRI of the left knee showed marked osteoarthritis.[1] (R. 283.)

On physical examination, plaintiff weight 316 pounds. *Id.* She had moderate tenderness over the muscles of the lower back and lower lumbar vertebrae She had moderately limited movement of the lumbar spine in all directions. Hess's left knee had a scar from a previous surgery. There was moderate tenderness over the joint line of the left knee. There was no signs of inflammation around the left knee. Hess experienced severe tenderness over the joint line of her right knee. Her movement was not limited, and there were no signs of interarticular effusion, inflammation, or swelling. Plaintiff had antalgic limping when she walked. (R. 284.)

Dr. Guergues diagnosed lower back pain; lumbar radiculopathy; myofascial pain syndrome; osteoarthritis of bilateral knees with pain. Dr. Guergues recommended that plaintiff undergo a series of caudal epidural steroid injections. *Id.*

On July 19, 2005, Dr. Guergues noted that plaintiff reported satisfactory pain control by using the current pain medications. She was not experiencing any side effects. (R. 392.)

<u>J. Vergo Attlesey, M.D.</u> On June 20, 2005, Dr. Attlesey completed a physical residual functional capacity. (R. 378-85.) Dr. Attlesey opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.

---

[1]The notes are incomplete. It also states that "there are _____ inside the knee." (R. 283.)

She could stand and/or walk for about 6 hours in an 8-hour day. She could sit for a total of about 6 hours in an 8-hour workday. Her ability to push or pull was unlimited. (R. 379.)

Although she could never climb ladders, ropes, or scaffolds, she could occasionally climb ramps and stairs. She could frequently balance and occasionally stoop, kneel, crouch, or crawl. (R. 380.)

A January 4, 2006 x-ray of Hess's left knee showed severe degenerative joint disease with the loss of the medial joint space eburnation and marked hypertrophic change with intraarticular joint mice. (R. 437.)

Garth Bennington, M.D. On September 19, 2006, Dr. Bennington, a primary care physician, began treating Hess. Plaintiff weighed 278 pounds. Hess reported that she had not been checking her sugars over the past several months. Her blood sugar had been testing around 170. Her hypertension was borderline, but she had not taken her medications. Her GERD was controlled. She reported that her mood had improved since she ended an abusive relationship. (R. 443.) She also reported chronic knee pain. (R. 444.) Dr. Bennington diagnosed diabetes mellitus type II, controlled; hypertension, benign; GERD; knee pain; overactive bladder; major depression, recurrent, moderate; history of adult physical abuse; and fatigue and malaise. (R. 445.)

On September 26, 2006, Hess telephoned Dr. Bennington's office and requested a prescription for a higher doses of medications for diarrhea and pain in her knees. She also requested a bedside commode as she was having several accidents at night because

the toilet was too far away. (R. 457.) On October 31, 2006, Hess complained of bilateral knee pain and pain in her lower abdomen. She reported constant diarrhea or constipation and an overactive bladder. On examination, she had diffuse tenderness over the abdomen. Dr. Bennington noted that plaintiff had irritable bowel and osteoarthritis of the knee. (R. 466.)

On November 3, 2006, Hess requested a prescription for a second knee brace and a handicapped parking placard. (R. 470.) On December 28, 2006, Dr. Bennington noted that plaintiff's chronic medical problems were stable, and that her knee had improved following an injection. (R. 490.)

A January 5, 2007 CT of Hess's neck soft tissue revealed mild, nonspecific deep cervical lymphadenopathy bilaterally; bilateral submandibular lymph nodes; and minimally enlarged submandibular glands bilaterally ranging in size up to 1.5 cm. There was a 9 mm superficial lymph node that corresponded to the palpable abnormality on the left side of the neck. Close clinical followup and a repeat CT were recommended. (R. 495-96.)

On January 24, 2007, plaintiff presented at the emergency room with complaints of chest pain. (R. 511.) A January 25, 2007 chest x-ray showed no evidence of cardio-pulmonary disease. (R. 517.)

A February 22, 2007 CT scan of Hess's abdomen showed a ventral herniation with multiple small bowel loops within the hernia sack. There was no evidence of a bowel obstruction. (R. 521-22.)

On February 26, 2007, Dr. Bennington completed a basic medical report for the Ohio Department of Job and Family Services. He indicated that plaintiff was diagnosed with diabetes mellitus type II; hypertension; GERD; incisional hernia; depression; irritable bowel syndrome; and osteoarthritis. He noted that plaintiff's osteoarthritis of the knees was progressively worsening. She had pain because of the ventral hernia and exhibited a depressed mood. He opined that she could stand/walk for only two hours in an 8-hour workday. She could only stand/walk for a half hour without interruption. She could sit for three hours in an 8-hour workday and for only one hour without interruption.

Dr. Bennington further opined that Hess was moderately limited in her abilities to bend, reach, and handle. She was markedly impaired in her ability to perform repetitive foot movements. (R. 524-25.)

On April 9, 2007, plaintiff presented at the emergency room with complaints of lower back pain. (R. 537.) She was diagnosed with a cervical sprain. (R. 538.) On April 16, 2007, plaintiff complained of right hip pain posteriorly. She had some radiation of pain down into her legs. (R. 553.) She had some mild tenderness in her right lower back to palpation. There was some increased pain with straight leg raise sitting to 90 degrees. She had normal range of motion and strength without joint enlargement or tenderness in her lower extremities. Dr. Bennington gave her a minor diagnosis of back pain un-specified and a minor diagnosis of back pain with radiculopathy. (R. 555.)

An April 23, 2007 x-ray of the lumbar spine showed a moderate degree of degenerative arthritis of the lumbosacral spine and levoscoliosis. (R. 561.)

On May 29, 2007, Hess complained of bilateral shoulder pain. She believed that pulling herself out of the car made it worse. She had soreness when lifting overhead. She had no prior history of problems with her shoulders. She had full range of motion. (R. 568.) Dr. Bennington suspected that fibromyalgia might be the cause of her pain. He prescribed a walker for plaintiff due to her severe osteoarthritis of her knees. (R. 570.) A June 17, 2007 CT scan of plaintiff's head was normal. (R. 578.)

On July 6, 2007, Hess complained of urinary frequency and leaking urine. She reported that when she drank anything she leaked stool or urine. Hess also complained of chronic diarrhea. (R. 592.) Hess was given a minor diagnosis of urinary frequency and abdominal pain, generalized. (R. 594.)  In a July 6, 2007 letter Dr. Bennington indicated that due to advanced arthritis, Hess was extremely limited with lifting, carrying, and prolonged standing. She also was limited by urinary incontinence, which required frequent trips to the restroom. She suffered from depression, which limited her ability to concentrate and work with other people. (R. 600.) On July 27, 2007, Hess continued to complain of urinary frequency and incontinence. (R. 612.)

On September 27, 2007, Hess requested a prescription rub for her knees. (R. 633.)

<u>Juliet D. Burry, M.D.</u> On February 2, 2006, Dr. Burry examined plaintiff and diagnosed low back pain, lumbosacral radiculopathy, and bilateral knee pain due to

osteoarthritis. Hess also complained of significant pain in her right shoulder. Hess was prescribed Darvocet and instructed to return for epidural steroid injections. (R. 790.)

Brad L. Bernacki, M.D. On December 19, 2006, Dr. Bernacki, an orthopaedic specialist, began treating plaintiff based on a referral from Dr. Bennington. (R. 660.) Hess reported bilateral knee pain, with the left knee being worse than the right, for the past 8 or 9 years. Her pain worsened with walking and climbing stairs. Hess had an antalgic gait and walked with a cane. Her left knee was swollen and tender diffusely. She had a 10 degree flexion contracture. X-rays showed severe osteoarthritis of the left knee. Dr. Bernacki administered a lidocaine and Kenalog injection. He opined that plaintiff would eventually require a total knee arthroplasty in her left knee. (R. 660.)

On October 4, 2007, Hess complained of bilateral shoulder pain, left knee pain, and right hip pain. (R. 766.) On October 17, 2007, Hess complained of pain and numbness in her left shoulder and arm. Dr. Bernacki that EMG studies had been normal. He diagnosed pain of the cervical spine and radiculitis. (R. 658.) On January 24, 2008, plaintiff reported that the pain in her right shoulder and left knee had gotten worse. The pain in her shoulder radiated up into her neck. (R. 770.)

On February 1, 2008, Hess underwent a MRI of her cervical spine, which revealed mild to moderate degenerative changes with dominant findings at C6-7. There was a severe right Luschka joint hypertrophy impinging the exiting right C7 nerve root. (R. 773.) A February 1, 2008 MRI of her left knee revealed severe chondromalacia in the medial femerotibial compartment, with moderate to severe chondromalacia in the

patelofemural articulation. The medial meniscus was autodigested or resected with pseudoextrusion of the remnant. There were large spurs in the notch impinging the cruciate ligaments and suspicious degenerated ACL. (R. 774.)

On June 3, 2008, plaintiff complained that her left knee pain had returned. The previous injections had provided relief for two months, and she requested another injection. She complained of constant swelling and locking and catching. (R. 778-79.)

On April 13, 2007, Hess underwent a left thyroidectomy. (R. 705-06.)

A January 5, 20008 x-ray of Hess's right wrist showed likely early arthritic joint space narrowing, and  radiocarpal joint space was noted. (R. 724.)

On April 29, 2008, plaintiff underwent a lumbar epidural steroid injection for severe low back pain. (R. 780-82.)

**Administrative Law Judge's Findings.**

1.    The claimant has not engaged in substantial gainful activity since July 23, 2004, her application filing date (20 CFR 416.920(b) and 416.971 *et seq*.).

2.    The claimant has the following severe impairments: obesity, diabetes, history of thyroidectomy, history of hiatal hernia with related surgery, history of diverticulitis, osteoarthritis of his [sic] knees, and affective and anxiety-related disorders (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    The claimant has the residual functional capacity to perform sedentary work as a defined in 20 CFR 416.967(a), subject to the

following: (1) no lifting and/or carrying of greater than five pounds frequently or ten pounds occasionally; (2) no sitting for longer than two hours at a time; (3) no standing and/or walking for longer than 30 minutes at a time or two hours total in a workday; (3) no more than occasional bending, stooping, ladder climbing, or reaching overhead; and (4) no working at unprotected heights or around dangerous machinery. From a mental standpoint, she is able to cope with routine stress but must avoid high stress work environments.

5.     The claimant is capable of performing past relevant work as a bank bookkeeper/switchboard operator. This work does not require the performance of work-related activities precluded by her residual functional capacity (20 CFR 416.965).

6.     The claimant has not been under a disability, as defined in the Social Security Act, since July 23, 2004 (20 CFR 416.920(f), the date her application was filed.

(R. 28-33.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge improperly evaluated the impact of plaintiff's obesity on her ability to function in a work setting</u>. Plaintiff maintains that although the administrative law judge concluded that plaintiff's obesity was a severe impairment, he did not provide any explanation as to how her obesity factored into his assessment of her residual functional capacity and it affected her work-related functioning. The administrative law judge also failed to consider the impact her obesity had in combination with her other severe impairments. Both her musculoskeletal impairments, abdominal hernia, and her fatigue were exacerbated by her obesity. The combined effects of obesity with other impairments may be greater than might be expected without obesity. Plaintiff maintains that the administrative law judge failed to fully evaluate her obesity in accordance with SSR 02-1p.

- <u>The administrative law judge failed to give controlling weight to the opinion of plaintiff's primary treating doctor</u>. Plaintiff argues that the opinion of her primary care physician, Dr. Bennington, should have been

given controlling weight by the administrative law judge.  Plaintiff maintains that the record contains extensive treatment records which include numerous clinical evaluations and objective test results. A February 26, 2007 report concluded that plaintiff was incapable of sustaining full time work activity.

- <u>The administrative law judge failed to obtain testimony from a qualified medical expert and vocational expert</u>.  Plaintiff argues that the administrative law judge abused his discretion by failing to have a medical expert testify. According to plaintiff, the administrative law judge also committed reversible error by failing to call a vocational expert because her claim presents issues which were best evaluated by a qualified vocational expert based on her need for an assistive device for her osteoarthritis of her knees. The administrative law judge failed to take into account that plaintiff would require the use of an ambulatory device in the work setting and how this would impact her ability to sustain full time, competitive employment.

- <u>The administrative law judge failed to properly evaluate plaintiff's credibility</u>.  The administrative law judge dismissed plaintiff's allegations based on her ability to perform routine household tasks and the lack of persistent side effects from medications.  The administrative law judge failed to acknowledge that she required frequent breaks throughout the

day. Plaintiff argues that the administrative law judge failed to consider the entire case record when evaluating her subjective complaints.

**<u>Analysis.</u>**

<u>Obesity</u>. Hess argues that the administrative law judge's decision does not contain a discussion of her obesity and how it would affect her residual functional capacity and her ability to function in a work environment.

Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002), explains the Administration's policy and protocol on the evaluation of obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-01p. The Ruling recognizes Body Mass Index (BMI) as one of the indicia of an individual's degree of obesity. *Id*. BMIs of 30.0-34.9 (Level I), 35.0-39.9 (Level II), and 35.0-39.9 (Level III) represent the classification of the degree of obesity. *Id*. Under this system of classification, Level III also includes BMIs above 40, and it is considered extreme obesity because of the potential for developing obesity-related problems. *Id*. Obesity increases the risk of developing impairments such as osteoarthritis and sleep apnea, and may contribute to mental impairments such as depression. *Id*.

SSR 02-01p provides that at step two of the five step evaluation, obesity may be considered severe alone or in combination with another medically determinable impairment. It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-01p[6]. SSR 02-01p also explains that a claimant's obes-

ity must be considered not only at step two of the Commissioner's five step evaluation process, but also at the subsequent steps.  The Ruling provides that:

> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. . . . An assessment should also be made of the effect of obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis . . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.

SSR 02-01p.  *See also* 20 C.F.R. §404.1523 (explaining that if the Administration finds "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.")  In sum, SSR 02-01p "specifies that the ALJ must explain how conclusions regarding a claimant's obesity were reached." *Fleming v. Barnhart*, 284 F. Supp.2d 256, 271 (D. Md. 2003).  SSR 02-01p is binding on all components of the Administration.  *See* 20 C.F.R. §402.35(b)(1); *Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006).

An adjudicator must consider the impact of a claimant's obesity on her residual functional capacity.  At step five of the five step of the sequential analysis, the burden shifts to the Administration to show that there are other jobs in significant numbers in

the economy that the claimant can perform consistent with her residual functional capacity, age, education, and work experience. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548(6th Cir. 2004); 20 C.F.R. §404.1520 (a)(4)(v). When the claimant is obese, the administrative law judge must consider this in his assessment. SSR 02-01p; *Young v. Barnhart*, 282 F. Supp. 2d 890, 897-898 (N.D. Ill. 2003).

The administrative law judge concluded that Hess's obesity was a severe impairment. (R. 28.) He noted, however, that her obesity had not resulted in end-organ damage or severe cardiac or respiratory-related impairments. (R. 29.) The administrative law judge concluded that "[h]er obesity, in combination with her bilateral knee condition, effectively limits her to sedentary work, but she retains the ability to effectively ambulate." *Id.* When formulating her residual functional capacity, the administrative law judge indicated that "[a] combination of the claimant's impairments, particularly her obesity and bilateral knee impairments, would reasonably limit her to sedentary work with limitations to standing, walking, and postural activities." (R. 31.) The administrative law judge determined that this residual functional capacity was consistent with the assessment of Dr. Barber, who opined that Hess would be limited with respect to prolonged walking, standing, and sitting, and lifting and carrying heavy objects because of her morbid obesity and decreased range of motion in her extremities and back. The administrative law judge noted that reviewing physicians opined that plaintiff was capable of light work, but he believed that sedentary work was more

consistent with her abilities based on the combined effects of her impairments, which included her obesity. (R. 31-32.)

Here, the administrative law judge adequately considered Hess's obesity in combination with her other impairments. In fact, the administrative law judge found greater limitations, as a result of her obesity, than found by the reviewing physicians. The administrative law judge acknowledged that her obesity would impact the osteo-arthritis in her knees and her ability to walk. Consequently, there is substantial evidence supporting the administrative law judge's findings and evaluation with respect to Hess's obesity.

<u>Treating Doctors' Opinions</u>.  Plaintiff argues that the Administrative Law Judge erred in rejecting the opinions of Dr. Bennington, that plaintiff was unable to sustain full-time competitive work activity.

<u>Treating Doctor: Legal Standard</u>.  A treating doctor's opinion on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical

adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson,* 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano,* 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other

information in the case record relevant to decision.  *Id.*  Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify."  *Id.*  When the treating source's opinion "is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ."  The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion.  When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source."  20 C.F.R. §404.1527(d)(2)(I).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions.  Social Security Ruling 96-2p.  It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.    Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4.    Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5.    The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6.    If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7.    A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting

them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner must make the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion. The administrative law judge concluded that Dr. Bennington's limitations with respect to sitting and using her upper extremities were not consistent with the objective evidence. The administrative law judge found that there was no objective findings suggesting that Hess had a significant upper extremity impairment or that she could not sit, with normal breaks, for a full workday. The administrative law judge relied on Hess's testimony that she could sit for five hours at a time and stand for up to two hours. The administrative law judge relied on an independent physical examination that failed to identify carpal tunnel impingement symptoms and October 2007 electromyographic testing that revealed no abnormalities with respect to her neck and upper extremities. (R. 246, 665.) Consequently, there is substantial evidence in the record supporting the administrative law judge's decision to reject Dr. Bennington's opinion that Hess was disabled.

Failure to Obtain a Medical and Vocational Expert. The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales,* 402 U.S. 389, 408 (1972). The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this sub-part." 20 C.F.R. § 404,1527(f)(2)(iii). The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert. HALLEX I-2-5-32 (September 28, 2005). "The primary reason an ALJ may obtain ME opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind." *Id.* The operations manual indicates that an administrative law judge "may need to obtain an ME's opinion" in the following circumstances:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);

- the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;

- the ALJ is assessing a claimant's failure to follow prescribed treatment;

- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;

- the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;

- the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;

- the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;

- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;

- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the nature of an impairment and identify any medically contra-indicated activities; or

- the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005). An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision. An administrative law judge abuses her discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations. *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989).

Here, the administrative law judge did not err by failing to call a medical expert. The record and medical evidence regarding plaintiff's impairments was not confusing. The opinions of the doctors were clear and did not require further explanation.

The administrative law judge also did not err in exercising his discretion to not call a vocational expert. The administrative law judge ultimately decided that Hess could perform her past relevant work as she had previously performed it. Plaintiff has not shown how the use of an assistive device for walking would prevent her from working at the sedentary level.

<u>Credibility Determinations: Controlling Law</u>. Pain is an elusive phenomena. Ultimately, no one can say with certainty whether another person's subjectively disabling pain precludes all substantial gainful employment. The Social Security Act requires that the claimant establish that he is disabled. Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity <u>by reason of any</u>

<u>medically determinable or mental impairment</u> which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A):

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide:

> (a) *General*.  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or

psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a).

In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986) the Sixth Circuit established the following test for evaluating complaints of disabling pain. First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987).

<u>Credibility Determination: Discussion</u>. The administrative law judge stated:

The claimant's subjective complaints are disproportionate with and not supported by the objective and substantial evidence in the record. She testified that she suffers from bowel and urinary incontinence, and the record documents some complaint of urinary incontinence, but there is no documentation of persistent complaint or treatment. Nor is there evidence that such conditions significantly limit her in a work environment.

In December 2004, the claimant reported that she gets her children ready for school and takes them to school. (Exhibit 38F). She said that she cleans her house but has to rest between chores. She said that she reads the Bible, prepares her lunch, picks her children up from school, helps them with homework, prepares dinner, bathes her children, and reads to them. She said that on the weekend she cleans, play with her children, and cooks.

At the hearing, the claimant testified that she lives with three of her four dependent-age children and takes and picks them up from school. She said that she is able to drive for one and one-half hour at a time. She said that she participated in vocational rehabilitation, working part-time for a two-week period. She said that she is computer literate. She said that she reads the Bible, cooks about nine times weekly, helps her children with homework, watches television, attends church, and crochets. She acknowledged that she can satisfactorily follow simple work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, function independently, maintain attention/concentration most of the time, maintain her personal appearance, and demonstrate reliability. She said that she has difficulty dealing with routine stress because of nerves, stress, and incontinence. Her level of activity is not consistent with the level and persistence of symptoms that she alleges.

(R. 32.) The administrative law judge further noted that the record does not document significant or persistent side effects from medications. *Id.* Additionally, the administrative law judge noted that the records reflected that plaintiff received only conservative, periodic treatment. The administrative law judge properly considered plaintiff's daily activities and the objective medical findings to assess plaintiff's allegations of disability, and the record contains substantial evidence supporting his conclusion.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel
United States Magistrate Judge